WILLIAM A. MANKE AND LAVON MANKE, HUSBAND AND WIFE; WILLIAM A. MANKE AND LAVON MANKE AS CO-TRUSTEES OF THE WILLIAM A. MANKE FAMILY TRUST AGREEMENT, APPELLANTS, *v.* AIRPORT AUTHORITY OF WASHOE COUNTY, A QUASI-MUNICIPAL CORPORATION, RESPONDENT.

No. 15800

December 12, 1985                    710 P.2d 80

*Digesti & Peck,* Reno, for Appellants.

*Raggio, Wooster & Lindell,* and *Richard F. Cornell,* Reno, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from a judgment of condemnation and award of damages.

Appellants William A. Manke and Lavon Manke were fee simple owners of 4.24 acres of vacant, unimproved, commercially zoned real property located in Washoe County. Respondent Airport Authority of Washoe County is a quasi-municipal corporation that owns and operates the Reno-Cannon International Airport. On February 23, 1983, respondent filed a condemnation

action to acquire appellants' property and served appellants with a summons in that action.

The case was tried before a jury. The evidence presented at trial established that the highest and best use of appellants' property was commercial or industrial development. The evidence also indicated that at the time appellants were served with the summons in the condemnation action they were in the initial stages of developing a shopping center on their property. Respondent's expert real estate appraiser testified that appellants' expenditures towards that end prior to service of the summons increased the fair market value of appellants' property by $70,000.

The jury returned a verdict in which it found the fair market value of appellants' property to be $568,100 on the date of the service of summons. The district court subsequently entered its judgment of condemnation for that amount plus interest from the date of the judgment, rather than from the date of the service of summons, and costs. Appellants seek modification of the judgment of condemnation to include interest from the date the summons was served. They argue that the taking of the property effectively occurred on that date. Because the "just compensation" guaranteed condemnees by the fifth amendment of the United States Constitution[1] and Article I, § 8 of the Nevada Constitution[2] includes interest from the date of the taking, appellants claim that they are entitled to interest from the date of the service of summons. We agree. We reverse and remand the case to the district court to modify its judgment of condemnation to include interest from the date of the service of summons.

NRS 37.120(1) provides that, for purposes of compensation and damages, condemned property is valued as of the date of the service of summons.[3] Any appreciation in the value of the condemned property after the date of the service of summons accrues to the condemnor; the "investment value" of the condemned property is "frozen" on that date. NRS 37.120(2) also provides that the condemnee is not entitled to any compensation made for

---

[1]The fifth amendment of the United States Constitution provides: "[N]or shall private property be taken for public use, without just compensation."

[2]Article I, § 8 of the Nevada Constitution provides: "[N]or shall private property be taken for public use without just compensation having been first made, or secured, except in cases of war, riot, fire, or great public peril, in which case compensation shall be afterward made."

[3]In pertinent part, NRS 37.120(1) provides:

> For the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued at the date of the service of summons, and its actual value at that date shall be the measure of compensation for all property to be actually taken. . . .

improvements to the condemned property subsequent to the date of the service of summons.[4] Consequently, development of the condemned property after the date of the service of summons is foreclosed; the "development value" of the condemned property is "frozen" on that date. Thus, where condemned property is vacant, unimproved, and of value to the condemnee primarily for purposes of investment or development, NRS 37.120(1) and NRS 37.120(2) operate to destroy the only value such property offers the condemnee on the date of the service of summons. Consequently, where condemned property is vacant, unimproved, and of value to the condemnee primarily for purposes of investment or development, as in the instant case, a taking occurs on the date of the service of summons.

In Stewart & Grindle, Inc. v. State, 542 P.2d 1242 (Alaska 1974), the Alaska Supreme Court, interpreting an eminent domain statute virtually identical to Nevada's,[5] ruled that where vacant and unimproved property is condemned a taking occurs at the inception of the eminent domain proceedings. That court held:

> Before the institution of an eminent domain action, possession of unimproved and untenanted property is a desirable economic asset if: (1) the property may appreciate in value; and (2) the owner is afforded the opportunity to improve the property toward whatever end he might desire. (Footnote omitted.) Under the Alaska statutory scheme, an owner is deprived of both investment potential and the possibility of future development the moment a condemnation action commences. . . . Meanwhile, the owner remains liable for property taxes, mortgage payments, and any other expenses incidental to legal ownership. Indeed, the property is of less value to him in his own name than it would be had the State taken immediate legal possession under a declaration of taking, for at least in the latter case he would be delivered from the burden of the property taxes. . . .

---

[4]In pertinent part, NRS 37.120(2) provides:

No improvements put upon the property subsequent to the date of service of summons shall be included in the assessment of compensation or damages, regardless of the date upon which the right to compensation and damages is deemed to have accrued.

[5]In pertinent part, AS 09.55.330 provides:

For the purpose of assessing compensation and damages the right to them accrues at the date of issuance of the summons, and its actual value at that date is the measure of compensation of the property to be actually taken. . . . No improvements put upon the property after the date of the service of summons shall be included in the assessment of compensation or damages.

We conclude that the institution of condemnation proceedings constitutes a compensable appropriation of vacant and unimproved land. . . .
*Id.* at 1247-1248.

*See* State v. Nordstrom, 253 A.2d 163 (N.J. 1969); United States v. 156.81 Acres of Land, Etc., 671 F.2d 336 (1982). *See also* Kirby Forest Industries, Inc. v. United States, 467 U.S. 1, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984).

Our holding that a taking occurred in this case on the date of the service of summons is buttressed by the fact that the burden placed upon appellants by the service of summons directly corresponds to a benefit conferred upon respondent, *Stewart & Grindle, Inc.,* 542 P.2d at 1248; *Nordstrom,* 253 A.2d at 166. Respondent's objective in condemning appellants' property was to create a clear zone surrounding the airport. Because development of appellant's property was frozen on the date of the service of summons, respondent's objective in condemning appellants' property was accomplished on that date.

Since we hold in the instant case that the taking of the property occurred on the date of the service of the summons, we conclude that the appellants are entitled to interest from that date. County of Clark v. Alper, 100 Nev. 382, 685 P.2d 943 (1984). *See also* 3 Nichols on Eminent Domain § 8.03 p. 8-312 (3d ed. 1981).[6]

We reverse and remand the case to the district court with instructions to modify its judgment of condemnation to include interest from the date of service of summons.

---

[6]If the condemned property is neither vacant, nor unimproved, nor of value to the condemnee for purposes of investment or development, the condemnee is only entitled to interest pursuant to NRS 37.175(2). A condemnee is entitled to interest from the date of the service of summons only when the condemned property is vacant, unimproved, and, thus, of value to the condemnee primarily for purposes of investment or development. Further, if the condemned property is vacant, unimproved, and of value to the condemnee primarily for purposes of investment or development, but the condemnee derives some incidental rent, profit, or use value from the property after the date of the service of summons, the condemnee remains entitled to interest from the date of the service of summons. However, incidental rent, profit, or use value must be deducted from the interest to which the condemnee is entitled. Stewart & Grindle, Inc., 542 P.2d at 1248.